**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CURTIS L. WESTBROOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-cv-4161 |
| | ) | |
| BOY SCOUTS OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on two motions filed by Defendant Boy Scouts of America: a motion for summary judgment [55] and a motion to strike Plaintiff's untimely and noncompliant response to its motion for summary judgment and to deem admitted Defendant's Local Rule 56.1 Statement of Material Facts [68 and 71]. For the following reasons, the Court grants Defendant's motion for summary judgment [55] and grants in part and denies in part Defendant's motion to strike Plaintiff's untimely and noncompliant response to its motion for summary judgment and to deem admitted Defendant's Local Rule 56.1 Statement of Material Facts [68 and 71].

**I.     Background**

**A.     Procedural History**

On July 6, 2010, Plaintiff filed a *pro se* complaint against the Boy Scouts of America ("BSA") alleging race and age discrimination and retaliation. The Court ordered that fact discovery close on March 23, 2011. From October 6, 2010 through March 8, 2011, Plaintiff failed to provide BSA with his initial disclosures, responses to BSA's written discovery requests, or his signed medical authorization and release, despite several court orders and motions by

BSA.  As a result, on March 8, 2011, Magistrate Judge Denlow issued a recommendation that the case be dismissed for want of prosecution.  On March 15, 2011, the Court ordered Plaintiff to fully comply with Magistrate Denlow's March 8, 2011 Order by April 15, 2011.  Despite the order, from March 15, 2011 through June 8, 2011, Plaintiff failed to fully comply with Magistrate Denlow's March 8, 2011 Order.  As a result, on June 8, 2011, BSA filed a motion for sanctions, which the Court granted in part and denied it in part.  In view of the preference in this circuit for litigating cases on the merits (see *Gabriel v. Hamlin*, 514 F.3d 734, 736 (7th Cir. 2008)), the Court declined to dismiss the case for want of prosecution after Plaintiff's efforts to comply—albeit belatedly—with his discovery obligations.  Instead, the Court held that Plaintiff was barred from using any documents that he did not disclose prior to May 18, 2011, from making any claims for damages that were not itemized before May 18, 2011, and from taking any further discovery.

On April 25, 2012, BSA timely filed its motion for summary judgment, memorandum in support, Local Rule 56.1 Statement of Material Facts, and the Notice to Pro Se Litigant Opposing a Motion for Summary Judgment.  On April 26, 2012, the Court issued an Order stating that Plaintiff's Response to BSA's Motion for Summary Judgment was due by June 11, 2012, and that BSA's Reply was due by June 25, 2012.  On May 29, 2012, in order to give Plaintiff an opportunity to review his deposition transcript, the Court issued an Order stating that Plaintiff's Response to BSA's Motion for Summary Judgment was now due on July 23, 2012 and that BSA's Reply was due by August 6, 2012.  On July 23, 2012, Plaintiff called BSA's counsel and requested an extension.  BSA's counsel objected to any extension, because Plaintiff had already been given 88 days to respond to BSA's motion for summary judgment.  Nonetheless, Plaintiff did not file his response on the 23rd or request an extension of time from the Court.  On

July 24, 2012, at 5:28 p.m., Plaintiff sent an e-mail to BSA's counsel attaching his response. The response did not include any exhibits. Plaintiff did not file his response with the Court at the time that he e-mailed the response to BSA's counsel, and, to date, Plaintiff has never filed his response with the Court.

### B.    Motion to Strike and Deem Defendant's Facts Admitted

Although Plaintiff responded to Defendant's motion to strike and referenced his response brief in that submission, Plaintiff never actually filed his response brief with the Court. Therefore, the portion of Defendant's motion to strike that requests that the Court strike Plaintiff's response brief is denied as moot, as there is no response brief on the docket to strike.

Defendant also requests that the Court deem admitted Defendant's Local Rule 56.1 Statement of Material Facts as Plaintiff has wholly failed in his obligations under Local Rule 56.1, despite being given 88 days to respond to Defendant's summary judgment motion and being served with the requisite Notice to Pro Se Litigant Opposing a Motion for Summary Judgment. Although *pro se* plaintiffs are entitled to a generous reading of their submissions, compliance with procedural rules is required. See *Cady v. Sheahan,* 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure"). Thus, Westbrook's status as a *pro se* litigant does not excuse him from complying with Local Rule 56.1. See *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Coleman v. Goodwill Indus. of Se. Wis., Inc.,* 423 Fed. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.,* 371 Fed. App'x 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was

well within the district court's discretion," even though the plaintiff was *pro se*) (citations omitted). Indeed, because Westbrook is *pro se,* Defendant served him with a requisite notice under Local Rule 56.2, which explained the requirements of Local Rule 56.1 and warned Westbrook that his failure to properly rebut the facts in Defendant's Local Rule 56.1 statement would result in those facts being deemed admitted. Despite the admonitions stated above, Plaintiff failed to file a response brief with the Court, let alone proper responses to Defendant's Statement of Material Facts. Given the considerations stated above, Defendant's motion to deem its facts admitted is granted.

### C. Factual History

The BSA is a non-profit corporation chartered by the United States of America, with its principal office located in Irving, Texas. The National Council, the corporate membership of the BSA, elects the BSA Executive Board, which is the governing body of the BSA. The Executive Board elects a Chief Scout Executive, who is the BSA's highest ranking officer. Organizationally, the BSA is comprised of four main regions: Central Region, Northwest Region, Southern Region, and Western Region. In 2010, the BSA consolidated the offices in each of these regions into the headquarters of the corporation located in Irving, Texas. Local councils, as their own separate legal entities, implement the BSA's programming and mission. There are approximately 289 local councils.

The BSA commissions individuals to be "commissioned professionals" when they have the requisite qualifications. These qualifications include a college degree or equivalent experience, demonstrated moral and personal fitness as set forth in the Scout Oath and Law, and the completion of BSA training. Once applicants qualify and receive their commission from the BSA, they may be hired by local councils as commissioned professionals or professional

Scouters.  The BSA does not dictate who the local councils should hire.  The hiring decisions regarding commissioned professionals belong to the local councils.  Likewise, receiving a commission from the BSA does not guarantee employment with a local council, especially when there are no positions available.  The BSA will assist the commissioned professionals and the local councils by keeping records of commissioned professionals and creating a list of commissioned professionals available for promotion based on a local council's criteria.  The local councils then choose which commissioned professionals they want to interview and hire.

The BSA guidelines set forth instances in which Scouting professionals may lose their commissions.  These reasons may include termination of employment or resigning from employment for an extended period of time.  However, the BSA may recommission a former commissioned professional who has lost his or her commission if the individual amicably left the organization at some point and then decided to return to work at a local council.  On the other hand, the BSA will not recommission an applicant who either was discharged for cause by the local council or resigned twice.

The Crossroads of America Council ("the CAC") is one of the many local councils affiliated with BSA.  Headquartered in Indianapolis, Indiana, the CAC serves Central Indiana, with offices in Indianapolis, Anderson, Hagerstown, Muncie, and Terre Haute.  The CAC serves 25 counties in Indiana, extending from the Illinois state line to the Ohio state line and has over 10,000 volunteers and serves 35,000 children.  The CAC's board establishes the council program and carries out the resolutions, policies, and activities of the council.  The CAC has 13 district offices which are administered by district chairs, executives, and commissioners.  These individuals are assisted by a staff of professionals and paraprofessionals.  There are currently 13 District Executives working for the CAC.  The CAC is run by a Scout Executive and any

employment decision made by a local council pertaining to its employees is at the local council's discretion. As such, all hiring and firing decisions are within the local council's purview and the BSA does not have any authority to say otherwise.

In 1993, Plaintiff applied for a District Executive position with the CAC. Plaintiff applied in person at CAC's Muncie, Indiana office. Plaintiff was interviewed exclusively by CAC representatives, and no one from BSA participated in Plaintiff's application or interview process. On or about July 5, 1993, the CAC notified Plaintiff that he was hired as a District Executive and assigned to CAC's Muncie office. The CAC paid Plaintiff's salary and gave him pay increases. From 1993 to 1995, Plaintiff reported to Reginald Nelson, Senior District Executive for the CAC, in the Muncie office. In 1993, Guz Bozio was the Chief Scout Executive for the CAC. Scott Claubaugh later replaced Bozio as the Chief Scout Executive for the CAC.

As a District Executive, Plaintiff was responsible for working with the volunteer board of directors and other community business leaders to identify, recruit, train, guide, and inspire them to become involved with youth programs at the CAC. Plaintiff also responsible for managing council operations—including finance, property management, advancement and awards, registrations, and Scout Shop sales—with the assistance of staff members. Additionally, Plaintiff was responsible for acting as a role model for volunteers and leaders.

On or about June 7, 1996, Plaintiff was charged by the State of Indiana with the following: (1) Residential Entry, a Class B felony; (2) Battery-A, a misdemeanor; and (3) Invasion of Privacy-B, a misdemeanor. Plaintiff was incarcerated pending the outcome of these charges. At the time, Plaintiff also was involved in the dissolution of his marriage. On June 24, 1996, Plaintiff was found in contempt of court in his civil dissolution action based, in part, on the aforementioned criminal actions. As a result, Plaintiff was sentenced to ninety (90) days in jail

for his contempt of Court. While in jail, Plaintiff was also seen by a clinical psychologist at the Delaware County Police Department. The psychologist found that Plaintiff was a threat to his wife (at the time) and had made numerous serious threats with action. The psychologist stated that based on his observations, Plaintiff's "potential for future violence is very high and that this is a dangerous situation."

On or about July 1, 1996, Plaintiff received a letter from the CAC notifying him that his employment was suspended pending an investigation into his criminal charges. At the time, Plaintiff understood that expiration of the CAC's 30-day job guarantee period would constitute adequate grounds for termination. On or about August 1, 1996, Plaintiff received another letter from CAC. In this letter, the CAC notified Plaintiff that it was terminating his employment because 30 days had passed since his suspension and no determination had been made on the charges filed against him. Upon his termination from the CAC, Plaintiff lost his professional commission from BSA.

In January of 2007, Plaintiff reported to BSA's National Office that he believed the CAC had "paper units." According to Plaintiff, "paper units" are scout groups that do not conduct any activities. Plaintiff was not employed by the CAC at the time. On January 10, 2007, Richard Christian, Director of Human Resources Administration for the BSA, sent a letter to Plaintiff stating that he had looked into Plaintiff's concern regarding the CAC and did not find any discrepancies or "paper units."

On July 3, 2008, Plaintiff sent an e-mail to William Fisher, the Central Regional Human Resources Director for the BSA, requesting reinstatement of his professional commission. At the time, Plaintiff's ultimate goal was to be rehired by the CAC as a District Executive, his former position. The BSA does not employ District Executives, and Plaintiff has never applied

for employment with the BSA. On or about July 15, 2008, BSA's Central Regional Office informed Plaintiff that he was required to submit his application materials to the CAC because he was seeking employment at the CAC and not at the BSA. Plaintiff never submitted an application for employment with the CAC in 2008. Instead, in or around August of 2008, Plaintiff contacted the BSA's National Office and spoke with Raymond Morrell, the Director of Human Resources Administration for the BSA's National Office. During this call, Morrell informed Plaintiff that there were no open positions within the CAC at the time.

During that same time period, on or about August 25, 2008, James Chandler, then Director of Executive Career Administration for the National Council of the BSA, contacted Plaintiff regarding his request for reactivation of his professional commission with the BSA. In his e-mail, Chandler stated that he was unable to send Plaintiff a response to his request for reactivation of his professional commission until Plaintiff provided him with his mailing address. Plaintiff responded to Chandler's e-mail on August 26, 2008, stating, "So there is such an individual after all" – referring to Chandler. Additionally, he criticized Chandler for allegedly placing his application on hold and then criticized Morrell for his alleged "arrogance and wayward remarks."

The BSA reviewed Plaintiff's application for reactivation of his professional commission and decided not to reactivate it because Plaintiff had been previously terminated by the CAC for cause – an automatic disqualifying factor. Further, BSA concluded that it was not in the best interests of its organization to reactivate Plaintiff's commission based on his behavioral history and the fact that the CAC had previously stated that it would not rehire Plaintiff based on his previous performance issues and inappropriate conduct. Therefore, the BSA did not reactivate Plaintiff's professional commission.

Plaintiff is not aware of anyone who applied for a District Executive position with the CAC in 2008. Plaintiff also is not aware of anyone who was discharged for cause by the CAC and then recommissioned by the BSA. Further, Plaintiff is not aware of anyone who was discharged for cause and reinstated by the CAC.

## II.     Standard of Review

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

No heightened standard of summary judgment exists in employment discrimination cases, nor is there a separate rule of civil procedure governing summary judgment in employment cases. *Alexander v. Wisconsin Dept. of Health and Family Servs.*, 263 F.3d 673, 681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)). However, intent and credibility frequently are critical issues in employment cases that in many instances are genuinely contestable and not appropriate for a court to decide on summary judgment. See *id.* Nevertheless, summary judgment in favor of the defendant is hardly unknown or, for that matter, rare in employment discrimination cases. *Wallace*, 103 F.3d at 1396.

## III. Analysis

In his complaint, Plaintiff alleges that (i) he was discriminated against based on his race and age when the BSA denied his request for reactivation of his professional commission in August of 2008, and (ii) he was retaliated against for reporting to the BSA's National Office in January 2007 that the CAC allegedly had "paper units." The Court addresses each claim in turn.

### A. Plaintiff's Title VII and ADEA Discrimination Claims

Plaintiff claims that Defendant discriminated against him on the basis of his race and age in violation of Title VII of the Civil Rights Act and the ADEA. As an initial matter, Plaintiff testified during his deposition that he has never applied for employment with the BSA. In fact, the BSA does not employ District Executives (the position Plaintiff originally held with the CAC and sought in 2008) for local councils because BSA and the local councils are separate corporate entities. In 2008, Plaintiff only sought to have his professional commission reactivated by BSA.

The evidence presented by Defendant and not rebutted by Plaintiff demonstrates that receiving a professional commission does not guarantee employment with a local council. Since Plaintiff has not sought employment with or ever been employed by the BSA, then the BSA is not a qualified employer of Plaintiff for purposes of Title VII of the Civil Rights Act of 1964 ("Title VII") or the Age Discrimination in Employment Act of 1967 ("ADEA").

In any event, Plaintiff cannot establish a prima facie case of race or age discrimination. Title VII prohibits discrimination in employment: "It shall be an unlawful employment practice for an employer * * * to discharge any individual because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA similarly proscribes employment discrimination on account of a person's age. 29 U.S.C. § 623. To prove a case of discrimination under Title VII or the ADEA, a plaintiff may show discrimination under either the "direct" or "indirect" methods of proof. *Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008) (explaining the misleading nature of this nomenclature and reiterating that the direct method may be proven with either direct or circumstantial evidence and that the indirect method proceeds under the burden-shifting rubric set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973)); see also *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Under the direct method of proof, the plaintiff may introduce either direct or circumstantial evidence to create a triable issue as to whether the adverse employment action was motivated by a discriminatory intent. *Id.*; see also *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005); *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). In other words, the plaintiff must show either "an acknowledgement of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination."

*Dandy v. United Parcel Service, Inc.,* 388 F.3d 263, 272 (7th Cir. 2004) (citing *Gorence v. Eagle Foods Ctrs., Inc.,* 242 F.3d 759, 762 (7th Cir. 2001)).

Under the indirect method of proof initially set forth in *McDonnell Douglas Corp. v. Green*, a plaintiff first must establish a *prima facie* case of discrimination. 411 U.S. 792, 802-04 (1973). In order to establish a *prima facie* case of race, sex, and/or age discrimination, a plaintiff must establish that: (1) he was a member of a protected class; (2) he was qualified for the job or was otherwise meeting the defendant's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside the protected class more favorably. See *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007). "The *McDonnell Douglas* framework applies to both Title VII and ADEA claims." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006) (citing *Krchnavy v. Limagrain Genetics Corp*., 294 F.3d 871, 875 (7th Cir. 2002)). If the plaintiff successfully establishes a *prima facie* case, a rebuttable inference of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. See *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997); see also *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007). Once the defendant provides a legitimate explanation, the burden then shifts back to the plaintiff to prove that the proffered justification is pretext.[1] *Fane*, 480 F.3d at 538. As demonstrated below, the Court need not even reach the pretext inquiry, as Plaintiff has wholly failed to establish a prima facie case of race or age discrimination.

---

[1] The Seventh Circuit has counseled that where a plaintiff has not met his burden of showing that a defendant's explanations are merely a pretext for discrimination, it is not necessary for a court to decide whether the plaintiff also established a *prima facie* case. See *Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1391 (7th Cir. 1990); see also *Box v. A & P Tea Co.*, 772 F.2d 1372, 1378 (7th Cir. 1985) (moving directly to third step of *McDonnell Douglas* approach where defendant articulated and offered proof of a legitimate, nondiscriminatory reason for adverse employment action).

Turning to the direct method, Plaintiff has provided no direct evidence of race or age discrimination. He offers no comments, jokes, documents, or even a discriminatory stray remark from anyone at BSA regarding the denial of his request for reactivation of his professional commission. See *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 393 (7th Cir. 2010) (affirming grant of summary judgment for defendant and finding no direct evidence of discrimination because plaintiff failed to provide any direct admission or demonstration of discriminatory intent); *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 563 (7th Cir. 2009) (affirming grant of summary judgment for defendant and finding no direct evidence of discrimination where plaintiff could not advance a single comment suggesting a discriminatory attitude). Therefore, he must use the indirect method of proof, and he fails in that endeavor as well.

First, Plaintiff testified during his deposition that he never applied for employment with BSA. Instead, in June of 2008, Plaintiff only sought reactivation of his professional commission, which is not a form of employment. In any event, even if the Court were to construe Plaintiff's request for reactivation of his professional commission as an application for employment, Plaintiff was not qualified to receive a professional commission because he had been previously discharged for cause by the CAC, which, based on the record before the Court, is grounds for automatic denial of such a request. Further, Plaintiff testified during his deposition that his ultimate goal in seeking the professional commission from the BSA in 2008 was to be hired as a District Executive at the CAC. However, the unrebutted evidence shows that no District Executive positions were available at the CAC at the time. Moreover, once BSA denied Plaintiff's request for reactivation of his professional commission, Plaintiff did not apply for any

position with the CAC. Accordingly, Plaintiff cannot establish that he applied for a position for which he was qualified.

Second, since Plaintiff never applied for employment with the BSA, he cannot establish that the BSA rejected him from a position within the organization. See *Sembos v. Philips Components*, 376 F.3d 696, 702 (7th Cir. 2004) (affirming grant of employer's motion for summary judgment on plaintiff's age discrimination claim and stating that "[a]n employer cannot be liable for failing to hire a person who does not apply for a job."); *Ritter v. Hill 'n Dale Farm, Inc.*, 231 F.3d 1039, 1045 (7th Cir. 2000) (affirming employer's grant of summary judgment on plaintiff's refusal to hire claim where plaintiff never applied for the position).

Third, Plaintiff cannot establish that he was treated less favorably than similarly situated applicants that sought reactivation of their professional commission. Plaintiff has provided no evidence of other similarly situated applicants who were terminated for cause by the CAC (or any other local council) and had their professional commission reactivated by the BSA. In fact, Plaintiff testified during his deposition that he was not aware of anyone who was discharged for cause by Crossroads of America and then recommissioned by BSA or aware of anyone *who had been discharged by Crossroads of America and then reinstated.* See, *e*.g., Pafford v. Herman, 148 F.3d 658, 669 (7th Cir. 1998) (affirming summary judgment for defendant where plaintiff could not establish that she was treated less favorably than similarly situated individuals).

Finally, Plaintiff cannot establish that the BSA's legitimate, nondiscriminatory reasons for denying his request for reactivation of his professional commission (the CAC previously terminating him for cause and Plaintiff's behavioral issues) were pretextual. The record demonstrates that it is the BSA's policy not to recommission an applicant when the applicant either was discharged for cause by the local council or resigned twice. The CAC previously

terminated Plaintiff's employment for cause. As a result, BSA rejected Plaintiff's request for reactivation of his professional commission. Plaintiff's arrest, contempt of court, and incarceration, which resulted in him missing work for over 30 days, are legitimate, nondiscriminatory reasons for rejecting Plaintiff's request for reactivation. Accordingly, summary judgment is appropriate on Plaintiff's claims of race and age discrimination.

### B. Retaliation

Plaintiff also sued BSA for retaliation, claiming that BSA retaliated against him for reporting to the BSA's national office in January 2007 that the CAC allegedly had "paper units." Under the anti-retaliation provision of Title VII, it is unlawful for an employer to "discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by the statute or "because he has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." *Brown*, 499 F.3d at 684 (quoting 42 U.S.C. § 2000e-3(a)). "A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method." *Tomanovich v. City of Indianapolis,* 457 F.3d 656, 662 (7th Cir. 2006) (quotations and citations omitted).

"Under the direct method, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Id.* at 663 (quotations and citations omitted). Alternatively, under the indirect approach, in order to establish a *prima facie* case for retaliation, the employee must show that (1) after filing a charge, the employee was subject to adverse employment action; (2) at the time, the employee was performing his job satisfactorily; and (3) no similarly situated employees who did not file a charge were subjected to an adverse employment action. See *Hudson v. Chicago Transit Auth.,* 375 F.3d 552, 560 (7th Cir. 2004). "'If the plaintiff establishes

a prima facie case, the burden of production shifts to the employer to present evidence of a non-discriminatory reason for its employment action.'" *Tomanovich,* 457 F.3d at 663 (quoting *Adusumilli v. City of Chicago,* 164 F.3d 353, 362 (7th Cir. 1998)). Then, if the employer presents evidence of a non-discriminatory reason for its employment action, "'the burden shifts back to the plaintiff to demonstrate that the employer's reason is pre-textual.'" *Id.* (quoting *Moser v. Ind. Dep't of Corr.,* 406 F.3d 895, 903 (7th Cir. 2005)).

As an initial matter, Plaintiff has failed to show that there is a causal connection between his January 2007 "complaint" and the August 2008 denial of his request for reactivation of his professional commission. Indeed, the lapse of 20 months between his "complaint" and the denial of his request for reactivation belies a finding that there was a causal connection between the two. See *Everroad v. Scott Truck Sys.,* 604 F.3d 481 (7th Cir. 2010) (one year too long); Tomanovich, 457 F.3d at 668-69 (four months too long). Additionally, as set forth in analyzing Plaintiff's discrimination claims, Plaintiff has failed to present evidence that similarly-situated individuals who did not engage in protected activity were treated more favorably. See *Nichols v. S. Ill. Univ.-Edwardsville,* 510 F.3d 772, 786 (7th Cir. 2007) (affirming summary judgment on retaliation claim where the plaintiffs failed to identify similarly-situated individuals who were treated more favorably); *Palermo v. Clinton,* 784 F. Supp. 2d 936, 948-949 (N.D. Ill. Mar. 2011) (same). Further, Plaintiff testified that none of the BSA representatives that allegedly retaliated against him ever made any mention of his alleged "complaint" or the investigation of the alleged "paper units," nor does the record contain any evidence that the BSA representatives that allegedly retaliated against him were aware of Plaintiff's "complaint" or the investigation. See *Stephens v. Erickson,* 569 F.3d 779, 788 (7th Cir. 2009) (affirming summary judgment for the employer and finding no retaliation where decision-makers had no knowledge of the protected

activity); *Treadwell v. Office of the Ill. Sec. of State*, 455 F.3d 778, 782 (7th Cir. 2006) (affirming summary judgment for the employer were there was no evidence the decision-makers were aware of the plaintiff's protected activity).

In the end, Plaintiff has presented nothing more than his speculative belief that his request for reactivation of his professional commission was rejected because of his "complaint" of the CAC allegedly having "paper units." As previously set forth, BSA had legitimate, nondiscriminatory reasons for rejecting his request for reactivation of his professional commission (the CAC previously terminating him for cause due to his arrest and incarceration) and Plaintiff's subjective beliefs regarding his complaint about "paper units" is insufficient to defeat summary judgment. See e.g., *Stephens*, 569 F.3d at 786 (noting that "inferences relying on mere speculation or conjecture will not suffice"). Accordingly, summary judgment is appropriate on Plaintiff's retaliation claim.

## IV. Conclusion

For these reasons, the Court grants Defendant's motion for summary judgment [55] and grants in part and denies in part Defendant's motion to strike Plaintiff's untimely and noncompliant response to its motion for summary judgment and to deem admitted Defendant's Local Rule 56.1 Statement of Material Facts [68 and 71]. Judgment will be entered in favor of Defendant and against Plaintiff Curtis L. Westbrook on all claims.

Dated: January 18, 2013

_____
Robert M. Dow, Jr.
United States District Judge